Bruce P. WILLIAMS, Petitioner,

v.

The DISTRICT COURT, SECOND JUDI-
CIAL DISTRICT, CITY AND COUNTY
OF DENVER and State of Colorado,
Hon. Robert S. Hyatt, District Court
Judge, Respondents.

No. 93SA90.

Supreme Court of Colorado,
En Banc.

Dec. 13, 1993.

Shannon A. Robinson, P.C., Shannon A. Robinson, Denver, for petitioner.

Hall & Evans, L.L.C., Daniel R. Satriana, Jr., Marlene T. Gresh, Denver, for respondents.

Justice MULLARKEY delivered the Opinion of the Court.

The petitioner, Bruce P. Williams (Williams), brought this original proceeding pursuant to C.A.R. 21 to seek reversal of a discovery order entered by the trial court requiring Williams to respond to written interrogatories concerning his sexual history. We issued a rule to show cause why the requested relief should not be granted and now make the rule absolute.

I

Williams, an airline pilot with Continental Airlines, filed an action against the defendants, Continental Airlines, Inc., four employees of Continental, and the corporate counsel and director of Continental. In this action, Williams seeks both compensatory and punitive damages for alleged defamation *per se*, breach of contract, breach of the covenant of good faith and fair dealing, negligence, negligent supervision, vicarious liability, invasion of privacy and outrageous conduct.

Two flight attendants brought information to Continental, alleging that Williams forced one of them to have sexual intercourse with him and made unwanted sexual advances to the other flight attendant in January 1991. In his second amended complaint, Williams alleges that Continental failed to conduct a timely workplace investigation of these charges, resulting in a republication of the defamatory statements about him throughout Continental.

The defendants served Williams with a detailed set of written interrogatories and requests for production of documents on October 8, 1992. Some of these interrogatories sought information pertaining to Williams' prior sexual contacts and relationships with women. For example, the interrogatories at issue in this case required Williams to supply the following information:

[INTERROGATORY NO.]8. Please provide the following information for every person with whom Plaintiff has had, or has attempted to have, sexual intercourse in the past five years, no matter how casual or inconsequential the relationship (for purposes of this Interrogatory, "sexual intercourse" means sexual penetration, cunnilingus, fellatio, anilingus, or anal penetration; "attempted" means any effort toward the goal of sexual intercourse, including, but not limited to, flirtations, acts of force and incidents which did not result in intercourse due to impotence):

a. The person's name;

b. The person's last known address;

c. The person's last known telephone number;

d. The person's age or approximate age;

e. The person's gender;

f. Where the incident referred to occurred;

g. Whether Plaintiff had actual sexual intercourse with the named person.

[INTERROGATORY NO.]9. Please provide the following information for every person with whom Plaintiff has had, or has attempted to have, sexual contact in the past five years, no matter how casual or inconsequential the relationship (for purposes of this Interrogatory, "sexual contact" means kissing or touching anywhere on the person with the purposes of sexual arousal, gratification or abuse, including the knowing touching of the clothing covering the immediate area of the person's intimate parts):

a. The person's name;

b. The person's last known address;

c. The person's last known telephone number;

d. The person's age or approximate age;

e. The person's gender; and

f. Where the incident referred to occurred.

[INTERROGATORY NO.]10. Please provide the names, present address and telephone number, and age or approximate age for every person Plaintiff has dated in the past five years.

For the purposes of this Interrogatory, "dated" is defined as an appointment to meet socially with a member of the opposite sex.

[INTERROGATORY NO.]11. Please list the names, last known addresses and last known telephone number of every Continental employee whom Plaintiff has dated, as defined in Interrogatory No. 10 above.

Williams objected to these interrogatories primarily on the grounds that the information sought was not relevant to his defamation lawsuit and would be inadmissible character evidence under CRE 404(b).[1] He also claimed that the interrogatories were designed improperly to harass and annoy him, and sought confidential information infringing upon the privacy rights of others.

On December 9, 1992, the defendants filed a motion to compel Williams to answer the challenged interrogatories pursuant to C.R.C.P. 26(b) and 37(a). As grounds for their motion, the defendants argued that (1) Williams placed his reputation in the community at issue by bringing a defamation claim; and (2) the discovery requests related directly to information about Williams' conduct with other women, thus seeking information

pivotal to one of the essential issues in the case.

In a written order, the trial court directed Williams to respond to the interrogatories.[2] The court reasoned that

the requested discovery may lead to admissible evidence permitted by C.R.E. 404(b) and 608, as well as evidence of general reputation as to Plaintiff's claimed damages in his defamation claim. This evidence could be in the form of evidence under C.R.E. 404(b) which tends to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Such evidence may also be in the form of any "impairment to the plaintiff's reputation and standing in the community and injury to his feelings which he incurred as a result of the defendant's statement."

. . . .

In sum, the Court finds that the discovery requests, though unique, apply directly and specifically to the Plaintiff's claims for relief and to the essential issues concerning Plaintiff's conduct with women. The requests therefore are reasonably calculated to lead to the discovery of admissible evidence.

■ The question before this court is whether the trial court abused its discretion in ordering Williams to respond to the interrogatories concerning his sexual history. We agree with the trial court that the information sought by the interrogatories is both relevant and reasonably likely to lead to the discovery of admissible evidence. However, we find that the trial court abused its discretion by failing to balance the defendants' need for this information against the privacy interests of Williams and the other persons

---

1. Colorado Rules of Evidence Rule 404(b) provides that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

2. The trial court also ordered Williams to answer interrogatories concerning whether he had been charged with or convicted of a felony or a misdemeanor and whether he had ever been accused of domestic violence or abuse. The court further ordered Williams to respond to several requests for production concerning the basis of his defamation claim against the defendants and whether Williams has a history of domestic violence or other crimes. Williams has not challenged these portions of the court's order in this proceeding.

with whom he may have been sexually involved.

## II

Under the Colorado Rules of Civil Procedure, the scope of discovery is very broad. *Kerwin v. District Court,* 649 P.2d 1086, 1088 (Colo.1982). For example, C.R.C.P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." In addition, when resolving discovery disputes, we construe the rules of civil procedure liberally to effectuate the full extent of their truth-seeking purpose. *Smith v. District Court,* 797 P.2d 1244, 1248 (Colo.1990); *National Farmers Union Property & Casualty Co. v. District Court,* 718 P.2d 1044, 1046 (Colo.1986); *Hadley v. Moffat County Sch. Dist. RE–1,* 681 P.2d 938, 945 (Colo. 1984). In close cases, the balance must be struck in favor of allowing discovery. *Smith,* 797 P.2d at 1248 (quoting *Hawkins v. District Court,* 638 P.2d 1372, 1375 (Colo.1982)). For this reason, a motion to compel discovery is committed to the discretion of the trial court, and the court's determination must be upheld on appeal absent a clear abuse of discretion. *Gagnon v. District Court,* 632 P.2d 567, 569 (Colo.1981). *See also Bond v. District Court,* 682 P.2d 33, 40 (Colo.1984); *In re Marriage of Mann,* 655 P.2d 814, 816 (Colo.1982).

Although the scope of discovery is very broad in Colorado, Williams argues that the trial court abused its discretion in ordering him to respond to interrogatories concerning his sexual history. According to Williams, the information sought by the defendants is not relevant or reasonably calculated to lead to the discovery of admissible evidence at trial, since any information concerning Williams' past sexual history would be inadmissible character evidence under CRE 404(b).[3] We disagree.

Our case law clearly holds that the standard of relevance for purposes of discovery under C.R.C.P. 26(b)(1) is not equivalent to the standard for admissibility of evidence at trial. *Martinelli v. District Court,* 199 Colo. 163, 168, 612 P.2d 1083, 1087 (1980). In fact, the rule specifically provides that "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." C.R.C.P. 26(b)(1). Thus, the fact that evidence pertaining to Williams' past sexual history may not be admissible at trial under CRE 404(b) does not preclude discovery of this information.

Moreover, in our view, it is clear that information pertaining to Williams' sexual history is relevant, without regard for its eventual admissibility at trial under CRE 404(b). As the defendants argued and as the trial court found, the requested discovery is relevant to the issue of Williams' damage claims. *See Bond,* 682 P.2d at 40.

Williams is seeking compensatory damages in excess of $1,000,000 and has alleged loss of reputation as one of his injuries. While damages are presumed, and need not be proven, in cases involving defamation *per se, Stump v. Gates,* 777 F.Supp. 808, 825 (D.Colo.1991), *aff'd,* 986 F.2d 1429 (10th Cir. 1993); *Kendall v. Lively,* 94 Colo. 483, 485, 31 P.2d 343, 344 (1934); *Hayes v. Smith,* 832 P.2d 1022, 1024 (Colo.App.1991), *cert. denied* (July 20, 1992), the jury must still consider any actual impairment to the plaintiff's reputation in determining the *amount* of damages. CJI–Civ.3d 22:25.[4] Moreover, a de-

---

**3.** In *People v. Spoto,* 795 P.2d 1314 (Colo.1990), we announced a four-part test governing the admissibility of other acts evidence proffered pursuant to CRE 404(b). This test requires a trial court to consider (1) whether the proffered evidence relates to a material fact; (2) whether the evidence is logically relevant; (3) whether the logical relevance is independent of the intermediate inference that the defendant has a bad character; and (4) whether the probative value

of the evidence is substantially outweighed by the danger of unfair prejudice. *Id.* at 1318.

**4.** In Colorado, the elements of a cause of action for defamation are: (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication. *Stump*

fendant in a defamation action may present any evidence which tends to mitigate damages. *Gomba v. McLaughlin,* 180 Colo. 232, 237–38, 504 P.2d 337, 339 (1972). Such evidence can include any publications by third persons dealing with the same subject, made before or at about the same time as the date of the publishing by the defendant. CJI–Civ.3d 22:24. In this case, information concerning his past sexual history may lead to evidence of Williams' reputation, and whether it has been harmed by the alleged actions of the defendants.

## III

■ When determining whether, and the extent to which, information sought to be discovered should be protected from disclosure, relevancy is not the end of the inquiry. This court has frequently recognized that the broad discovery permitted by C.R.C.P. 26(b)(1) may lead to discovery abuses. *See Leidholt v. District Court,* 619 P.2d 768, 770 (Colo.1980). For this reason, C.R.C.P. 26(c) allows the trial court to issue protective orders as justice requires "to protect a party ... from annoyance, embarrassment, oppression, or undue burden or expense." However, the party opposing discovery has the burden of establishing the need for a protective order. *Belle Bonfils Memorial Blood Center v. District Court,* 763 P.2d 1003, 1010 (Colo.1988); *Bond,* 682 P.2d at 40; *Leidholt,* 619 P.2d at 771.

In this case, Williams' argument is twofold. As discussed above, Williams first argues that the trial court erred in compelling discovery pertaining to his sexual history since the information is not discoverable on grounds of relevancy. Williams also argues, in essence, that the trial court erred in not entering a protective order preventing discovery of his sexual history.[5] According to Williams, the challenged interrogatories were designed improperly to harass and annoy him, and the answers to the interrogatories would reveal confidential information which will infringe upon the privacy rights of others not before the court.

■ When determining whether good cause exists for issuance of a protective order in a particular case, the trial court must balance the competing interests that would be served by granting or denying discovery. *Belle Bonfils,* 763 P.2d at 1010. This balancing test is accomplished by weighing the interests of Williams and the persons with whom he has been involved in protecting the confidentiality of their intimate relationships against the defendants' interest in obtaining sufficient evidence to contest Williams' claims. *See id.; Direct Sales Tire Co. v. District Court,* 686 P.2d 1316, 1319 (Colo. 1984); *Bond,* 682 P.2d at 40; *Leidholt,* 619 P.2d at 770–71. A three-part balancing inquiry also must be undertaken by the trial court when the right to confidentiality is invoked.[6] *Martinelli,* 199 Colo. at 174, 612 P.2d at 1091. This inquiry entails determining whether the party seeking to prevent disclosure has a legitimate expectation that the information will not be disclosed, whether the state interest in facilitating the truth-seeking process through litigation is sufficiently compelling to overcome the asserted privacy interests, and whether disclosure can occur in a less intrusive manner. *Id.* at 174, 175, 612 P.2d at 1091, 1092. In an appropriate case, the trial court may limit the type of discovery undertaken or otherwise fashion an order to protect the asserted privacy interests. *See, e.g., Belle Bonfils,* 763 P.2d at 1013–14.

In this case, the trial court simply found the information requested by the defendants to be relevant, and ordered Williams to answer all of the interrogatories. It did not

*v. Gates,* 777 F.Supp. 808, 825 (D.Colo.1991), aff'd, 986 F.2d 1429 (10th Cir.1993); *Walters v. Linhof,* 559 F.Supp. 1231, 1234 (D.Colo.1983).

5. Williams did not file a motion for a protective order with the trial court. Instead, he waited to raise his concerns with the discovery requested by the defendants until they had filed a motion to compel discovery. However, this point is not really significant since C.R.C.P. 37(a)(1) allows

the trial court to enter a protective order if it denies a motion for order compelling discovery in whole or in part.

6. Williams did not specifically raise a constitutional argument before the trial court. Instead, he argued that the challenged discovery constituted an "invasion of privacy."

consider any of the other interests involved in this case before it reached this decision. In our opinion, the trial court's failure to balance the interests of Williams and the defendants, as well as those of the individuals who may have been involved with Williams, requires that we vacate the trial court's discovery order.

Accordingly, the rule is made absolute, and the case is remanded to the trial court for application of a balancing standard consistent with this opinion.

Justice VOLLACK specially concurs in the result only.

Justice VOLLACK specially concurring in the result only:

The majority holds that the district court was correct in finding that the information sought by the defendants in their interrogatories was both relevant and reasonably calculated to lead to admissible evidence. Maj. op. at 910. The majority further holds that the trial court abused its discretion by failing to balance the defendants' need for this information against the privacy interests of Williams and the individuals with whom he may have been sexually involved in determining whether good cause exists for issuance of a protective order. Maj. op. at 910–911, 912. According to the majority, the trial court's failure to undertake the balancing inquiry developed in *Martinelli v. District Court,* 199 Colo. 163, 612 P.2d 1083 (1980), requires this court to vacate the trial court's discovery order. Maj. op. at 912–913.

Given the sensitive nature of the requested information, the potential harm and embarrassment to third parties, and the scope of permissible discovery authorized by C.R.C.P. 26(b)(1), I believe that the district court abused its discretion in: (1) determining that defendants' discovery requests pertaining to Williams' sexual history, including the names of each person with whom he had sexual contact over the past five years, fell within the scope of permissible discovery as defined by C.R.C.P. 26(b); (2) failing to apply the four-part analysis enunciated in *Munson v. Boettcher & Co.,* 854 P.2d 199, 210 (1993), in analyzing the likelihood of the requested dis-

covery leading to admissible evidence; and (3) failing to apply a balancing standard to accommodate the privacy interest of Williams and to protect the private lives of the individuals, not parties to the action, with whom he had sexual contact over the past five years from public scrutiny. Since the trial court did not balance the competing interests involved, I agree with the majority's conclusion that the discovery order should be vacated. I disagree with the majority's opinion because it would eviscerate the limits of Colorado Rule of Civil Procedure 26(b) by permitting overbroad discovery in cases of confidentiality affecting the privacy interest of third parties. I disagree with the majority's extension of *Martinelli* beyond cases involving a governmental interest and the discovery of public records.

## I.

I recognize at the outset that the scope of discovery lies largely within the sound discretion of the trial court and that this court will uphold a trial court's pretrial discovery order unless the trial court has abused its discretion. *See Bond v. District Court,* 682 P.2d 33, 36 (Colo.1984); *LeGrange v. District Court,* 657 P.2d 454, 455 (Colo.1983). I begin my analysis with a review of Colorado Rule of Civil Procedure 26(b), which governs the permissible scope of discovery in civil litigation.

C.R.C.P. 26(b)(1) provides as follows:

(b) **Scope of Discovery.** Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) **In General.** Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the

trial *if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.*

(Emphasis added.)

This court is guided by certain basic principles in resolving a discovery dispute. Discovery is intended to apprise the litigants of the facts giving rise to a claim or defense by permitting a broad inquiry. *Smith v. District Court,* 797 P.2d 1244, 1248 (Colo.1990); *Hadley v. Moffat County Sch. Dist. RE-1,* 681 P.2d 938, 945 (Colo.1984). Information is discoverable if it is sufficiently related to the issues in the litigation.

The defendants are seeking discovery of information about Williams and the individuals with whom he had sexual intercourse (including attempted intercourse and flirting) or sexual contact (including kissing), or whom he has dated (including any appointment to meet socially with a member of the opposite sex), during the past five years. The defendants contend that the discovery requests pertaining to Williams' sexual history and practices apply directly and specifically to his claims for relief and are reasonably calculated to lead to the discovery of admissible evidence. Specifically, they state (1) that by the very nature of his claims—libel and slander—Williams has placed his reputation in the community at issue; and (2) that the discovery requests relate directly to information about Williams' sexual activities and interactions with women, thus seeking information pivotal to one of the essential issues in the case.[1]

The defendants' requested discovery seeks the identity of all of Williams' alleged sexual contacts within a five-year period prior to the incident in question. The defendants make no showing of how Williams' sexual history within such a substantial time span would be directly relevant to the subject matter of this action. Specifically, the defendants have neither limited their requests in any respect nor demonstrated how Williams' prior sexual conduct is material to the issue of consent to intercourse that goes to the essence of the defamation claim.

The majority holds that the information sought by the defendants is relevant and reasonably calculated to lead to admissible evidence at trial. Maj. op. at 910. The majority opinion places no limitations on discovery. In concluding that the information is within the permissible scope of discovery, I fear that the majority decision, taken to its natural result, has the broad effect of placing trial courts in the rather impracticable position of having to admit discovery concerning details of a plaintiff's prior sexual conduct with others in a sexual harassment case where the only issue in the case is the offensive conduct in the workplace. Discovery relating to the plaintiff's sexual history outside and unrelated to the workplace will rarely be relevant to plaintiff's working environment. Within this context, discovery of information about a plaintiff's prior sexual relationships would also have a chilling effect on a plaintiff's pursuit of a sexual harassment claim.

The defendants' discovery requests solicit invasive questions concerning Williams' sexual history that should remain private absent a compelling need for disclosure. The broad scope of the interrogatories concerning Williams' sexual history are not reasonably calculated to lead to admissible evidence.

---

1. Williams says the statement—that he is a rapist—is false, that he never raped defendant Kristine Williams but rather had consensual intercourse with her, and that he never made any sexual advances towards defendant Danielle Ames. In a defamation action for libel or slander per se, Williams is required to prove that: (1) a false and defamatory statement was made; (2) it was published to a third party; (3) fault amounting at least to negligence on the part of the publisher resulted; and (4) there was either actionability of the statement irrespective of special damages or the existence of special damages caused by the publication. *See Stump v. Gates,* 777 F.Supp. 808, 825 (D.Colo.1991), *aff'd,* 986 F.2d 1429 (10th Cir.1993); *Walters v. Linhof,* 559 F.Supp. 1231, 1234 (D.Colo.1983). I am mindful that, by filing a defamation action, Williams has put his reputation at issue. I note, however, that defendants have requested discovery of *all* persons with whom Williams had sexual contact outside the workplace over the past five years. Although defendants seek discovery pertaining to Williams' reputation of forcing or attempting to force sexual relations on women, I note that the scope of discovery should be narrowly drawn, given the highly intrusive nature of the request, and that the discoverable information should be reasonably calculated to lead to admissible evidence.

Such discovery, if permitted, could encourage abusive inquiries designed to harass, embarrass, and discourage plaintiffs from pursuing their claims.[2]

The defendants also assert that the information sought in interrogatory Nos. 8–11 is discoverable to "reveal other instances where [petitioner] claims that he engaged in consensual sexual intercourse and the other party involved believes that sex was forced upon them." Furthermore, the defendants maintain that

> [t]he discovery propounded by Defendants is reasonably calculated to lead to the discovery of admissible evidence concerning whether [petitioner] has acted in the same or similar manner as alleged by [K.] Williams and Ames on other occasions and to other women. The discovery may reveal that [petitioner] had in fact forced other women to have sexual intercourse against their will or had attempted to force other women to have sexual intercourse against their will. The discovery may also reveal instances where [petitioner] has been so insistent or demanding in his sexual advances that women have been required to repeatedly and/or forcefully refuse his advances.

In essence, the majority opinion has the effect of permitting all information sought in the interrogatories to be discovered without first analyzing whether the discovery is reasonably calculated to lead to admissible evidence. I believe that, in order to ascertain whether the information sought in the interrogatories would lead to admissible evidence, the district court should be required to analyze the information under Rule 404(b) of the Colorado Rules of Evidence[3] to determine the admissibility of other acts as evidence in a civil action. The district court in this case found that the requested discovery may lead to admissible evidence proffered pursuant to CRE 404(b). Based on the record and the trial court order, the trial court failed to apply the four-part analysis enunciated in *Munson v. Boettcher & Co.*, 854 P.2d 199, 210 (1993) (citing *People v. Spoto*, 795 P.2d 1314 (Colo.1990)).[4]

The *Munson* factors, taken collectively, set a proper analytic framework for the district court to evaluate the discovery requests. Where the information relating to a plaintiff's sexual behavior is sought by means of a discovery request that may amount to harassment and intimidation of the plaintiff, the potential for prejudice often outweighs the probative value of the information sought. In this case, the probative value of the broad discovery of every person whom the petitioner had dated, and with whom he had flirted or attempted to engage in sexual

---

**2.** In *Priest v. Rotary*, 98 F.R.D. 755, 758–59 (N.D.Cal.1983), the court addressed a discovery request substantially similar to the one objected to by the petitioner here. In that case, the court denied a bar owner's request to discover the names of each sexual partner of the plaintiff during the past ten years in his effort to defend against a waitress-employee's allegations of hostile and offensive working conditions caused by his sexually harassing her. The district court, in granting the plaintiff's motion for a protective order, noted that Rule 26(b) of the Federal Rules of Civil Procedure permits discovery only of information " 'reasonably calculated to lead to the discovery of admissible evidence,' " and that evidence pertaining to the plaintiff's sexual history would be inadmissible for any of the purposes for which the defendant sought to introduce it. *Id.* at 757. The proposed discovery was further barred by Fed.R.Evid. 404 which excludes evidence of character or past acts offered to prove a person's propensity to act in conformity with the past. *Id.* at 758–59. The court concluded that the purpose of the discovery request was to harass, intimidate, and discourage the plaintiff in

her efforts to prosecute the case, and therefore denied the discovery request. *Id.* at 762.

**3.** Under Rule 404(b) of the Colorado Rules of Evidence,

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**4.** This court enunciated a four-part analysis in determining the admissibility of "other acts" in a civil action:

> 1) whether the proffered evidence relates to a material fact; 2) whether the evidence is logically relevant; 3) whether the logical relevance is independent of the intermediate inference that the defendants have bad character; and 4) whether the probative value is substantially outweighed by danger of unfair prejudice.

intercourse, is substantially outweighed by the danger of unfair prejudice.

In my view, limitations are needed to bridle the degree of sexual history detail appropriate for discovery. "Questions remote in time or place to the working environment are wholly irrelevant and unlikely to lead to admissible evidence. Such questions would only serve as tools of annoyance and harassment and serve no purpose." *Mitchell v. Hutchings,* 116 F.R.D. 481, 485 (D.Utah 1987). Consequently, as the defendants' discovery requests regarding Williams' sexual history appear to be generated for no reason other than harassment and embarrassment, I find that the district court abused its discretion in allowing unbridled inquiry into Williams' past sexual history.

### II.

Williams finally contends that the requested discovery constitutes an unwarranted invasion of his constitutional privacy rights as well as the rights of each person with whom he had sexual contact during the past five years.[5] Specifically, Williams asserts that the defendants' discovery requests intrusively probe into the most intimate details of his and the other individuals' personal lives.

An individual's constitutional privacy interest is implicated when an individual is forced to disclose information regarding personal sexual matters, and the courts do protect against the intrusion of such rights.[6] In *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), a defa-

mation action, the United States Supreme Court reviewed a challenge to a discovery protective order restricting the inquiry into the plaintiffs' financial affairs that was issued pursuant to a Washington state rule of civil procedure modeled on the federal Rule 26(c). In examining the pretrial discovery, the Court noted:

> It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery.

> There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes.

*Id.* at 34–35, 97 S.Ct. at 2208–09 (footnote omitted).

Although I acknowledge that discovery is intended to permit broad inquiry, in certain situations a party's right to privacy supersedes the other party's right to obtain the information.[7] When the disclosure being

---

5. Williams, in his brief before this court, raises a constitutional right to privacy argument, recognized by the United States Supreme Court as an "individual's interest in avoiding disclosure of personal matters." *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1976).

6. *McCarthy v. Barnett Bank of Polk County,* 876 F.2d 89 (11th Cir.1989); *Harris v. Amoco Prod. Co.,* 768 F.2d 669 (5th Cir.1985), *cert. denied,* 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986); *Tavoulareas v. Washington Post Co.,* 724 F.2d 1010 (D.C.Cir.), *vacated on other grounds,* 737 F.2d 1170 (D.C.Cir.1984); *Whalen,* 429 U.S. at 599, 97 S.Ct. at 876.

7. California courts, in reviewing discovery requests pertaining to sexual conduct which infringe upon the right to privacy, are in accord. *See Vinson v. Superior Court,* 43 Cal.3d 833, 239

Cal.Rptr. 292, 740 P.2d 404 (1987) (reversing the trial court's order requiring the plaintiff to undergo a medical and psychological examination without any limitation on probing into her sexual history or practices since the defendants had failed to demonstrate "good cause" in this inquiry); *Mendez v. Superior Court,* 206 Cal.App.3d 557, 569–70, 253 Cal.Rptr. 731 (1988) (holding that, in a case involving sexual harassment, sexual assault, or sexual battery, a plaintiff's allegations that a defendant's improper behavior produced emotional distress will not justify a defendant's requested invasion of plaintiff's sexual privacy under § 2017(d) of California statutory law); *Morales v. Superior Court,* 99 Cal.App.3d 283, 160 Cal.Rptr. 194 (1979); *Fults v. Superior Court,* 88 Cal.App.3d 899, 902, 152 Cal.Rptr. 210 (1979) (involving a paternity action in which the plaintiff agreed to answer questions about her sexual activity during the period of conception

sought implicates constitutionally protected privacy interests, the discovery requests should be sufficiently relevant and narrowly tailored.

The majority recognizes that the trial court should have balanced the competing interests in protecting the confidentiality of the intimate relationships between Williams and the women with whom he had sexual contact against the defendants' interest in obtaining sufficient evidence to contest Williams' claims. Maj. op. at 912. Having found the discovery requests to fall within the scope of permissible discovery, the majority then concludes that the trial court should have engaged in the balancing inquiry enunciated in *Martinelli* in determining whether good cause exists for the issuance of a protective order. *Id.* In my opinion, the majority extends *Martinelli* to all situations where the right to confidentiality is invoked.

In *Martinelli v. District Court*, 199 Colo. 163, 612 P.2d 1083 (1980), this court, in response to the petitioner's constitutional right of privacy argument, directed the trial court to conduct an *in camera* examination and engage in a three-part balancing inquiry.[8] *Id.* at 174–75, 612 P.2d at 1091–92. The majority result is internally inconsistent. The majority is vacating the discovery order to apply the *Martinelli* balancing test to

determine whether good cause exists for the trial court to issue a protective order even though the majority has already concluded that the information in the interrogatories is discoverable. The majority has determined that the information is discoverable since it is relevant and is reasonably likely to lead to admissible evidence. The majority opinion also creates a contradiction between theory and reality since it is necessary to first consider the competing interests involved before determining the relevancy of the sought after information.

My examination of the case law leads me to conclude that, before the information is produced, the defendants must show that their need for obtaining the requested information outweighs the privacy interests of Williams and the individuals with whom he had sexual contact over the past five years. *Belle Bonfils Memorial Blood Ctr. v. District Court*, 763 P.2d 1003, 1010 (Colo.1988); *Leidholt v. District Court*, 619 P.2d 768 (Colo. 1980). I believe, therefore, that a balancing test is the appropriate standard to employ in narrowing the scope of discovery, in light of the privacy concerns associated with the disclosure of Williams' prior sexual history and the identities of every woman with whom he has engaged in sexual contact and sexual

but was not willing to answer questions about her sexual activity one year prior and one year after conception). The *Fults* court found that the challenged interrogatories sought "[disclosure] of the most intimate aspects of [the petitioner's] sexual life," and that the discovery requests were not narrowly drawn to "assure maximum protection of the constitutional interests at stake." *Id.* at 904–05, 152 Cal.Rptr. 210 (quoting *Britt v. Superior Court*, 20 Cal.3d 844, 143 Cal.Rptr. 695, 574 P.2d 766, 775 (1978)).

8. In *Martinelli*, this court adopted a tripartite balancing test in determining whether information contained in the personnel files and reports of the petitioner police officers is of such a highly personal or sensitive nature that it falls within the zone of confidentiality. This court held that the personnel files and special reports containing information relative to citizen complaints against the police officers were protected from discovery to the extent that this information came within the scope of the official information privilege. The court noted, however, that this information was discoverable if this material contained evidence probative of specific instances of miscon-

duct and the officers' propensity toward misconduct. Finally, the court addressed the petitioners' claim that the personnel files sought to be discovered were exempt from discovery pursuant to the open records laws and noted that the legislative intent was that "a court should consider and weigh whether disclosure would be contrary to the public interest." *Martinelli*, 199 Colo. at 177, 612 P.2d at 1093. This court has only relied on the *Martinelli* analysis in cases involving the open records laws in which the discovery of public records was at issue. *See People v. D.K.B.*, 843 P.2d 1326 (Colo.1993); *Civil Service Comm'n v. Pinder*, 812 P.2d 645 (Colo. 1991); *Sargent Sch. Dist. No. RE–33J v. Western Servs., Inc.,* 751 P.2d 56 (Colo.1988). In my view, the three-part balancing test enunciated in *Martinelli* is not applicable to the present case since, in *Martinelli*, the subject matter was directly related to the operations of a governmental function or state interest, whereas here we are not dealing with either the discovery of professional acts of misconduct or an individual's right to privacy in public records subject to either the official information privilege or the open records act.

intercourse over the past five years.[9] This balancing test is consistent with the balancing provisions inherent in C.R.C.P. 26(b), which permits the court to restrict discovery based, *inter alia*, on the need to discover the information, the importance of the issues at stake, and undue burden.

This court has utilized a similar balancing test with respect to the disclosure of financial information during the course of a civil suit. In *Leidholt v. District Court*, 619 P.2d 768, 770 (Colo.1980), we relied on a "balancing of competing interests" analysis in recognizing the defendant's expectation of privacy in his personal financial affairs. This court specifically stated:

> The need for discovery must be balanced by weighing the defendant's right to privacy and protection from harassment by an intrusion into his financial affairs, against the plaintiff's right to discover information which is relevant to a claim for punitive damages.

*Id.* at 770–71.

Similarly, in *Belle Bonfils Memorial Blood Center v. District Court*, 763 P.2d 1003 (Colo. 1988), this court carefully balanced the competing interests involved in determining whether a plaintiff who had contracted the AIDS virus following a blood transfusion was entitled to the disclosure of the identity of the blood donors.

In further examining the right to privacy of the women with whom Williams had sexual contact over the past five years, I note that both federal and state courts have been vigilant in protecting individuals' privacy interests in not having their names and addresses disclosed.[10] Defendants cannot seriously maintain that they are entitled to know about every incident, including the date and place, and the name, address, and age of every woman with whom Williams has engaged in sexual contact and sexual intercourse over the past five years. In my opinion, such requests are unduly burdensome, overreaching, and would cause harm to innocent third parties.

While I do not think that the defendants should be totally precluded from inquiring about Williams' past sexual history, such interrogatories should be limited to information reasonably calculated to lead to the discovery of admissible evidence. In my view, the defendants' need for discovery should be balanced against the privacy rights of Williams and the individuals with whom Williams had sexual contact. The discovery requests should be carefully tailored to comply with the requirements of C.R.C.P. 26(b) coupled with the constitutional protection of the right to privacy. In determining the discoverable information pertaining to Williams' past sexual history and practices, I would direct the trial court to balance the defendants' need to discover the information against the intrusion into the privacy rights of Williams and the individuals with whom he had sexual contact during the past five years. I would also direct the trial court, if necessary, to protect the confidentiality of this information by such safeguards as an *in camera* hearing or an *in camera* inspection of the documents.

Accordingly, I specially concur in the result only.

9. In *Board of Trustees of Leland Stanford Jr. University v. Superior Court*, 119 Cal.App.3d 516, 525 (1981), the California Supreme Court asserted as follows:

> And even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a "careful balancing" of the "compelling public need" for discovery against the "fundamental right of privacy."

10. *See Breed v. United States Dist. Court for the Northern Dist. of Cal.*, 542 F.2d 1114, 1116 (9th Cir.1976) (trial court's order compelling discovery of the California Youth Authority's personnel and inmate files which identified the minors in custody was reversed); *Heights Community Congress v. Veterans Admin.*, 732 F.2d 526, 529–30 (6th Cir.1984), *cert. denied*, 469 U.S. 1034, 105 S.Ct. 506, 83 L.Ed.2d 398 (1984); *Wine Hobby USA v. United States Internal Rev. Serv.*, 502 F.2d 133, 137 (3rd Cir.1974); *Belle Bonfils Memorial Blood Ctr. v. District Court*, 763 P.2d 1003, 1014 (Colo.1988); *Denari v. Superior Court*, 215 Cal. App.3d 1488, 264 Cal.Rptr. 261 (1989).